IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KYU HWAN HWANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 2:20-cv-02904-SHL-atc |
| | ) |
| JERRY QUEZADA ARITA, an individual and resident of Tennessee; SAINT FRANCIS HOSPITAL – MEMPHIS (in other name, TENET HEALTHCARE CORPORATION), a corporation; MEMPHIS POLICE DEPARTMENT, government (law enforcement agency); MEMPHIS FIRE DEPARTMENT, government (emergency medical services), | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION TO GRANT MOTIONS TO DISMISS AND TO REMAND REMAINING CLAIMS TO STATE COURT

Before the Court by order of reference[1] are two motions to dismiss. Defendant Saint Francis Hospital ("Saint Francis") filed its motion on December 17, 2020. (ECF No. 6.) *Pro se* Plaintiff Kyu Hwan Hwang filed his response on April 27, 2016. (ECF No. 16.) Saint Francis replied on May 5, 2021. (ECF No. 17.) Defendant City of Memphis[2] filed its motion on May

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

[2] The City of Memphis correctly asserts that its police and fire departments are not entities capable of being sued separate from the City itself. (ECF No. 25, at 1 n.1.) As sub-units of the City, they lack capacity to be sued, making the City of Memphis the proper Defendant here. *See Gandy v. Shelby Cnty., Tenn.*, No. 2:04-cv-02919-SHM-dkv, 2007 WL 9710091, at *5 (W.D. Tenn. Feb. 6, 2007) (citing *Jones v. Marcum*, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002)).

31, 2021.  (ECF No. 25.)  Hwang did not file a response, and the time to do so has passed.  For the following reasons, it is recommended that both motions to dismiss be granted.  It is further recommended that the remaining claims against Jerry Quezada Arita, the only remaining Defendant, be remanded to the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis, where the case was filed prior to its removal to this Court.

## **PROPOSED FINDINGS OF FACT**

The following findings of fact are based on the allegations in Hwang's complaint.  (ECF No. 1-3.)  On October 1, 2020, Hwang filed his lawsuit in state court, alleging four causes of action: negligence against Defendant Jerry Quezada Arita; violation of the Emergency Medical Treatment and Labor Act ("EMTALA") against Saint Francis; police misconduct and/or negligence against the Memphis Police Department; and tampering with governmental records against the City of Memphis Fire Department.  (*Id.* at 8–10.)

Hwang's claims arise from a car accident on October 15, 2019, in Memphis, Tennessee.  He alleges that he was stopped in his vehicle on Airways Boulevard and East Parkway South that night when he was struck from behind by a vehicle driven by Arita.  (*Id.* at 4–5, 12.)  Hwang alleges that the police report from the accident, which charged Arita with three moving violations, was inaccurate in two respects.  First, it misidentified the precise location of the crash.  (*Id.* at 5.)  Second, it identified him as Chinese when he is actually Korean.  (*Id.*)

Hwang alleges that an unnamed Memphis police officer urged him to sign a police document, presumably the police report from the accident.  (*Id.* at 6.)  Hwang also alleges that the police officer failed to properly check Hwang's insurance document, leading the officer to believe that Hwang did not have it with him at the time of the accident.  (*Id.*)  Hwang does not allege that he was cited for driving without insurance, but instead suggests that the police

2

officer's actions influenced Hwang's behavior later at the Saint Francis emergency room, where he was taken after the accident. (*Id.* at 5–6.) While his contentions are not entirely clear, Hwang alleges that the police officer's conduct led to Hwang's inability to sign a contract at Saint Francis, which he believes was one of the reasons Saint Francis did not treat him. (*Id.* at 6.)

Hwang also alleges that Saint Francis improperly explained several things to him, ignored his reports of pain in his neck, and eventually "dumped" him out of the emergency room and denied him re-entry. (*Id.* at 5-6.) Hwang apparently slept in the hospital parking lot after being discharged before contacting his spouse and leaving the premises at 9:00 or 10:00 a.m. the next day. (*Id.* at 6.)

As for the Memphis Fire Department, Hwang alleges that its records reflect that Hwang told someone on the scene of the accident that he wanted to be sent to the Saint Francis emergency room. (*Id.* at 7.) Hwang asserts that he could not have offered such a directive, as he had recently immigrated from South Korea, had never seen or heard of Saint Francis, and had never been in an emergency room in his life. (*Id.*) Hwang also appears to allege some sort of collusion between the fire department and Saint Francis and, perhaps correspondingly, implies that Saint Francis is a monopoly, which allows it to provide substandard medical care. (*Id.*)

Ultimately, Hwang asserts his damages stem from the following wrongs: Arita's negligent operation of his vehicle (*id.* at 8–9); Saint Francis's EMTALA violations, which include that "they dumped [him] out of the hospital before he was stabilized" and failed to get his "informed consent" (*id.* at 9–10); unspecified police misconduct, with recovery based upon the general damages remedies provision found in Tennessee Code Annotated § 29-39-102 (*id.* at 10); and allegations that the Memphis Fire Department violated Tennessee Code Annotated § 39-16-504, a criminal code provision governing the destruction of and tampering with records (*id.*).

3

Hwang specifically alleges that he is entitled to punitive damages based on the fire department's conduct (*id.*) and generally alleges that he is entitled to punitive damages against all Defendants (*id.* at 11). He states a general claim for $175,030,000 in damages and later requests $750,000 in compensatory damages. On December 17, 2020, Saint Francis removed the case to this Court, invoking the Court's federal question jurisdiction under 28 U.S.C. § 1446(a).

## PROPOSED CONCLUSIONS OF LAW

### I.     Standard of Review for Failure to State a Claim

To determine whether Hwang's complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a

4

claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Capital Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); s*ee also Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to *pro se* complaints, "however inartfully pleaded"). Nevertheless, *pro se* litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

## II.     Hwang's Claims Against Saint Francis

Saint Francis asserts that Hwang has failed to state a claim under EMTALA because he "failed to make any factual allegations that he had an emergency medical condition or that Saint Francis had actual knowledge of an emergency medical condition and then failed to stabilize

5

Plaintiff." (ECF No. 6, at 7.)  It further argues that the claim "is more properly characterized as a health care liability claim, not an EMTALA claim."  (*Id.* at 6.)

In his response, Hwang does not address Saint Francis's arguments regarding the EMTALA allegations.  Instead, he "alleges that the motion to dismiss for failure to state a claim was based on UNCONSTITUTIONAL statu[t]e."  (ECF No. 16, at 2.)  In the memorandum accompanying his response, Hwang references "demand letters" and "written notice of the potential claim."  (ECF No. 16-1, at 2.)  But Hwang's response does not cite any statute, nor does it explain what would render the unnamed statute unconstitutional.  It appears that Hwang might be addressing Saint Francis's assertion in its motion to dismiss that his claim is actually a health care liability claim.  In its reply, Saint Francis interprets Hwang's response as an assault on the constitutionality of Tennessee's health care liability pre-suit notice provision and addresses grounds for the dismissal of those claims.  (ECF No. 17, at 2.)

To the extent Hwang attempts to use his response to the motion to dismiss as a vehicle for amending his complaint, it is procedurally improper.  "[A] court considering a motion to dismiss 'must focus only on the allegations in the pleadings.'"  *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (quoting *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)).  A plaintiff cannot "amend [his] complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint."  *Id.*  To the extent Hwang is challenging the constitutionality of Tennessee's health care liability pre-suit notice provision, or, for that matter, to the extent he is attempting to add any claims through his response, it is recommended that those allegations be disregarded.  *See Jones v. Wilson & Assocs., PLLC*, No. 2:12-cv-02510-JDT-cgc, 2013 WL 4039046, at *7 n.7

6

(W.D. Tenn. Aug. 6, 2013), *aff'd* (June 18, 2013) (recommending that new allegations in a response be disregarded).

As to the merits of Hwang's EMTALA claim, he has asserted that Saint Francis discharged him before he was stabilized and, apparently, did not get his consent to discharge him. The relevant EMTALA provision addressing stabilization provides:

> If any individual . . . comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide . . . within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition . . . .

*Sawhook v. U.T. Med. Grp., Inc.*, No. 2:09-cv-02259-BBD-dkv, 2009 WL 10700448, at *2 (W.D. Tenn. Oct. 21, 2009) (quoting 42 U.S.C. § 1395dd(b)). EMTALA defines "emergency medical condition" as

> (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
>   (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
>   (ii) serious impairment to bodily functions, or
>   (iii) serious dysfunction of any bodily organ or part . . . .

42 U.S.C. § 1395dd(e)(1). Under the Act, "stabilize" means, in relevant part, "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." *Id.* § 1395dd(e)(3)(A). Similarly, "stabilized" under EMTALA means "that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility." *Id.* § 1395dd(e)(3)(B).

7

To demonstrate an EMTALA violation regarding a failure to stabilize, a plaintiff must show: "(1) actual knowledge by the hospital that the patient is suffering from an emergency medical condition; (2) that the hospital had staff and facilities available to stabilize the medical condition; and (3) that the hospital failed to stabilize the patient before discharge." *Sawhook*, 2009 WL 10700448, at *2 (citing *Kiser ex rel. Austen v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, No. 1:01-cv-01259-JDT-jdb, 2002 WL 1398543, at *4 (W.D. Tenn. May 3, 2002)).

Saint Francis accurately asserts that Hwang's complaint fails to allege that the hospital had actual knowledge that he was suffering from an emergency medical condition or that it failed to stabilize him before it discharged him.[3] Hwang alleges that, while in the waiting room, he "expressed his fundamental and additional medical symptoms about his head, including, but not limited to dizziness, the feeling of nausea, and so on." (ECF No. 1-3, at 5.) Hwang asserts that he almost vomited in the waiting room. (*Id.*) Saint Francis performed x-rays upon him before discharging him. (*Id.* at 5–6.)

Hwang never alleges that Saint Francis was aware of his emergency medical condition, or even that he was suffering from an emergency medical condition. The duty to stabilize under EMTALA "does not arise unless the hospital first knows that the patient is suffering from an emergency medical condition." *Kiser*, 2002 WL 1398543, at *3 (citation omitted). The Sixth

---

[3] Hwang asserts that Saint Francis violated EMTALA in spite of him having both health and vehicle insurance. (ECF No. 1-3, at 9.) Hwang's insured status is irrelevant when it comes to the Court's EMTALA analysis. *See* 42 U.S.C. § 1395dd(h) ("A participating hospital may not delay provision of an appropriate medical screening examination required under subsection (a) or further medical examination and treatment required under subsection (b) in order to inquire about the individual's method of payment or insurance status."). In fact, "Congress enacted [EMTALA] in order to . . . prevent[] hospitals from dumping patients, who lack insurance to pay for their claims, by either refusing treatment or transferring them to other hospitals." *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1132 (6th Cir. 1990).

Circuit "has long held that liability under section [1395dd](b) requires actual knowledge of the condition." *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 786 (6th Cir. 2003) (citing *Cleland v. Bronson Health Care Grp., Inc.,* 917 F.2d 266, 268 (6th Cir. 1990)). "Section (b) explicitly states that the duty to stabilize patients only arises when 'the hospital determines that the individual has an emergency medical condition.'" *Id.* (quoting 42 U.S.C. § 1395dd(b)(1)).

Ultimately, given the actual knowledge requirement that exists under the statute, "a hospital cannot be liable under § 1395dd(b) for failing to stabilize a condition that it did not detect." *Elmhirst v. McLaren N. Michigan*, 726 F. App'x 439, 444 (6th Cir. 2018). In *Elmhirst*, the patient alleged that the hospital failed to stabilize her medical condition—a vertebral dissection—before discharging her. *Id.* at 441. After her symptoms worsened, she returned to the hospital four days later, where it was determined she had suffered a stroke caused by the vertebral dissection. *Id.* The Sixth Circuit determined that the complaint "allege[d] no facts that plausibly support an inference that the Hospital actually knew that she was suffering from an emergency medical condition, yet discharged her anyway." *Id.* at 445. The same is true here, as Hwang has not alleged Saint Francis knew of any emergency medical condition he was facing. Moreover, unlike the plaintiff in *Elmhirst*, who identified her emergency medical condition in her pleadings, Hwang has failed to do even that.

Because Hwang failed to allege an essential element of an EMTALA claim, it is recommended that the claim against Saint Francis be dismissed.

**III.     Hwang's Claims Against the City of Memphis**

The City asserts that the allegations made against its fire and police departments fail to state a claim upon which relief can be granted based on Tennessee's Governmental Tort Liability

9

Act ("GTLA"), Tennessee Code Annotated §§ 29-20-101, *et seq*. The City asserts that those allegations—which relate to the police department's report and the allegedly false records maintained by the fire department—fail to allege that any City employee committed an act of negligence or omission within the scope of his or her employment.

The GTLA provides that, "[e]xcept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). At the same time, the GTLA "has removed governmental immunity from suit for injuries 'proximately caused by a negligent act or omission of any employee within the scope of his employment.'" *Peatross v. City of Memphis*, No. 2:14-cv-2343-SHL-cgc, 2015 WL 13021901, at *7 (W.D. Tenn. Mar. 12, 2015), *aff'd*, 818 F.3d 233 (6th Cir. 2016) (quoting Tenn. Code Ann. § 29-20-205).[4] Still, even when immunity is waived, "a governmental entity cannot be liable for damages unless the government employee whose acts are at issue was acting within the scope of his employment and those acts were both negligent and the proximate cause of the plaintiff's injury." *Hullett v. Tartt*, No. 3:06CV1070, 2008 WL 11510392, at *16 (M.D. Tenn. May 27, 2008) (citing Tenn. Code Ann. § 29-20-310(a)).

To that end, under Tennessee law, "[a] complaint against a governmental entity for tort must overtly allege that the tort was committed by an employee or employees of the governmental entity within the scope of his or their employment." *Brandon v. Shelby Cnty.*, No.

---

[4] The immunity is not removed if an injury arises out of certain conduct, including such things as the exercise or failure to exercise a discretionary function, false arrest, and the institution or prosecution of any judicial or administrative proceeding. *See* Tenn. Code Ann. § 29-20-205(1)–(10). None of those exceptions are at issue here.

10

W201700780COAR3CV, 2018 WL 5013779, at *3 (Tenn. Ct. App. Oct. 16, 2018) (quoting *Gentry v. Cookeville Gen. Hosp.*, 734 S.W.2d 337, 339 (Tenn. Ct. App. 1987)). Relying on the GTLA and *Gentry*'s interpretation of it, Tennessee courts have concluded that, "if the complaint does not specifically allege that the injury for which suit was brought was committed by an employee of the governmental entity acting within the scope of employment, it does not state a claim for which relief can be granted because the action is not alleged to be within the class of cases excepted by the statute from governmental immunity." *Willis v. Guyton*, No. 02A01-9311-CV-00247, 1995 WL 328714, at *3 (Tenn. Ct. App. June 2, 1995); *see also Brandon*, 2018 WL 5013779, at *3 (collecting cases).

As the City of Memphis points out in its motion, Hwang's complaint does not contain any allegations that a City of Memphis employee committed an act of negligence or omission—or any other tort—while acting within the scope of his employment or that any such action proximately caused his injuries. The end result is that Hwang has failed to state a claim against the City of Memphis upon which relief could be granted.

    A.    <u>Hwang's Claims Against the City of Memphis Fire Department</u>

The crux of Hwang's claims against the City of Memphis Fire Department are that, even though he did not tell any fire department employee that he wanted to be sent to the emergency room at Saint Francis, someone at the fire department falsely recorded that directive on a governmental record. (ECF No. 1-3, at 6–7, 10.) Hwang cites to Tennessee Code Annotated § 39-16-504, which makes it a Class E felony for any person to

> (1) Knowingly make a false entry in, or false alteration of, a governmental record;
> (2) Make, present, or use any record, document or thing with knowledge of its falsity and with intent that it will be taken as a genuine governmental record; or
> (3) Intentionally and unlawfully destroy, conceal, remove or otherwise impair the verity, legibility or availability of a governmental record.

11

Tenn. Code Ann. § 39-16-504(a).  The statute endows city, county, and state attorneys with the power to take appropriate legal action to enforce the statute.  *Id.* § 39-16-504(c)(1).

Tennessee law allows that "the violation of a criminal statute may constitute a civil action for negligence per se 'where it affirmatively appears that the violation was the proximate cause of the injury for which recovery is sought.'"  *Corvin v. Bice*, No. 1:05-CV-219, 2007 WL 776501, at *7 (E.D. Tenn. Mar. 9, 2007) (quoting *Baker v. Moreland*, No. 89-62-II, 1989 WL 89758, at *3 (Tenn. Ct. App. Aug. 9, 1989)).  "The Tennessee Supreme Court has, over the years, been quick to invoke the negligence per se doctrine with regard to violations of penal statutes designed to protect the public."  *Id.* (quoting *Rains v. Bend of the River*, 124 S.W.3d 580, 592 (Tenn. Ct. App. 2003)).  To establish negligence *per se* in this context requires one to show that the offender "(1) violated a statute, ordinance, or regulation that requires or prohibits a particular act for the benefit of the plaintiff or the general public; (2) that the injured person was within the class of individuals the legislature intended to benefit and protect by enacting the statute, ordinance, or regulation; and (3) that the defendant's negligence was the proximate cause of the injured party's injury."  *Abeyta v. HCA Health Servs. of Tn, Inc.*, No. M2011-02254-COA-R3CV, 2012 WL 5266321, at *10 (Tenn. Ct. App. Oct. 24, 2012) (citing *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992)); *see also Brown v. City of Memphis*, 440 F. Supp. 2d 868, 875 (W.D. Tenn. 2006).  Moreover, "a statutory negligence *per se* claim cannot stand unless the statute establishes a standard of care."  *King v. Danek Med., Inc.*, 37 S.W.3d 429, 460 (Tenn. Ct. App. 2000).

It is far from clear that the government record fabrication statute cited by Hwang establishes a standard of care that would support a claim of negligence *per se*.  The Court has been unable to locate any authority finding that statute (or a similar statute) to "amount to a

12

legislative judgment as to the standard of care." *King*, 37 S.W.3d at 460 (quoting *Talley v. Danek Med., Inc.*, 179 F.3d 154, 159 (4th Cir. 1999)).

Even if the statute does establish a standard of care, however, Hwang has not established that the fire department's alleged negligence was the proximate cause of his injuries. Though the arc of Hwang's claim against the fire department is not entirely clear, he appears to assert that the fire department decided to take him to the Saint Francis emergency room, either against his wishes or without his input, and then to justify that unilateral decision, the fire department created a document that falsely memorialized Hwang's consent. Setting aside the plausibility of such a scenario, it is not feasible to suggest that the fire department's alleged falsification of records was the cause of any alleged injuries Hwang suffered at the hands of Saint Francis. *See, e.g.*, *In re Tenn. Valley Auth. Ash Spill Litig.*, 787 F. Supp. 2d 703, 722–23 (E.D. Tenn. 2011) (explaining that, under Tennessee law, proximate cause "is that act or omission which immediately causes or fails to prevent an injury" and "is a substantial factor in producing the end result") (quotations omitted). Hwang has not shown, for example, that he would not have been taken to Saint Francis regardless of the alleged false documentation of his desire to there. It was the decision to take Hwang to Saint Francis that allegedly led to his injuries, not the memorialization (false or otherwise) of that decision in a document. Therefore, to the extent Hwang attempts to assert claims of negligence *per se* against the fire department, he has failed to allege facts that could plausibly state a claim for relief.

B.   Hwang's Claims Against the City of Memphis Police Department

Hwang's claim involving the Memphis Police Department is even more sparse. The claim revolves around the allegation that one of its officers "continued to urge, press and even coerce the Plaintiff to sign on the police document very wrongfully" and that the officer

13

apparently failed to appreciate that Hwang was insured. (ECF No. 1-3, at 6.) Even accepting that allegation as true and construing it in the light most favorable to Hwang, as the Court must do when evaluating a motion to dismiss, it does not suggest any tort committed by a police department employee. Hwang does not, for example, identify any breach of duty in or damages from the alleged conduct. The allegation is thus insufficient to support a cause of action.

Hwang also fleetingly refers to "police misconduct" in his complaint. (ECF No. 1-3, at 10.) Like the statute underlying Hwang's government-records allegations discussed above, the Tennessee statute governing official misconduct is a criminal statute. *See* Tenn. Code Ann. § 39-16-402. Also like the government-records statute, the official misconduct statute "does not provide a private right of action and does not establish a standard of care for purposes of a negligence *per se* claim." *Slowik v. Lambert*, No. 3:19-CV-00501-DCLC, 2021 WL 1176075, at *6 (E.D. Tenn. Mar. 29, 2021). Accordingly, to the extent Hwang asserts a negligence *per se* cause of action pursuant to Tennessee's official misconduct statute, he fails to state a claim upon which relief can be granted.

For all of the foregoing reasons, it is recommended that Hwang's claims against the City of Memphis be dismissed.

## IV. Hwang's Remaining Claims Against Arita

Should the foregoing Report and Recommendation be adopted, the only claim that remains is Hwang's state-law negligence claim against Arita. It is recommended that that claim be remanded to the Shelby County Circuit Court, where Hwang originally filed his lawsuit.

Saint Francis removed this case solely based on federal question jurisdiction. 28 U.S.C. § 1446(a). At the time of removal, Saint Francis had received consent to remove from the City of Memphis but had not received consent from Arita. Arita did not subsequently file his consent

14

to the removal, but neither did he file an objection. Under 28 U.S.C. § 1446(b)(2)(A), "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." However, "technical defects in the removal procedure, such as a breach of the rule of unanimity, may not be raised *sua sponte*, and must be raised by a party within thirty days of removal or they are waived." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516–17 (6th Cir. 2003) (citing 28 U.S.C. § 1447(c); *Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir. 1995)). Therefore, jurisdiction was properly vested upon this Court, at least by the initial removal, based upon the federal question posed by Hwang's EMTALA claims against Saint Francis.

Those federal claims will be extinguished if the claims against Saint Francis are dismissed, however. The basis for this Court's continuing jurisdiction over Hwang's claims against Arita could be 28 U.S.C. § 1332, which requires that, at the time of the filing of the lawsuit, the parties are citizens of different states and the amount in controversy exceeds $75,000.[5] The complaint seems to satisfy these requirements. At the time it was filed, Hwang was a resident of Arkansas, and Arita was a resident of Tennessee. (*See* ECF No. 1-3, at 4.) Though Hwang's complaint does not delineate the amount of damages he specifically attributes to Arita, he appears to assert that Arita is jointly and severally liable with the other Defendants for the $175,030,000 in damages he allegedly suffered. (*Id.* at 10–11.)

---

[5] In the absence of a basis for diversity jurisdiction, it is also recommended that the Court not exercise its supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367(a). Though "trial courts do possess some discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed . . . [, t]hat discretion is minimal, and this circuit has moved away from the position that the court has discretion to retain jurisdiction over a pendent state claim where the federal claim has been dismissed before trial." *D.B. ex rel. Lundy v. Shelby Cnty. Health Care Corp.*, 501 F. Supp. 3d 602, 610 (W.D. Tenn. 2020), *aff'd*, No. 20-6407, 2021 WL 2774262 (6th Cir. July 2, 2021) (internal citations, quotations, and alterations omitted).

Based on the record before the Court, diversity could have provided alternate grounds for removal, but neither Arita nor any of the other Defendants have raised it as a basis for this Court's jurisdiction. The Sixth Circuit does not appear to have addressed whether courts properly retain jurisdiction in the face of such an uninvoked jurisdictional basis in circumstances such as these. Other courts have arrived at conflicting conclusions. Many embrace the approach that "the mere fact that a case falls within a congressional grant of federal subject matter jurisdiction does not give a federal court authority to hear a case; a party must also affirmatively *invoke* the applicable ground or grounds of congressionally authorized jurisdiction." *Henok v. JPMorgan Chase Bank, N.A.*, 106 F. Supp. 3d 1, 6 (D.D.C. 2015) (quoting Jeannette Cox, *Removed Cases and Uninvoked Jurisdictional Grounds*, 86 N.C. L. REV. 937, 953–57 (2008)); *see also Wood v. Crane Co.*, 764 F.3d 316, 326 (4th Cir. 2014) (noting that the opposite approach embraced by the Fifth and Ninth circuits "has been criticized as contrary to well-settled practice"); *Spina v. Lu Feng Liu*, No. 20-CV-9368 (JGK), 2021 WL 2174189, at *5 (S.D.N.Y. May 28, 2021) (finding that "the dismissal of the United States eliminated the only properly established basis for subject matter jurisdiction," necessitating remand even though diversity existed).

The circumstances facing this Court resemble those in *J.S.R. ex rel. Rojas Polanco v. Washington Hosp. Ctr. Corp.*, 667 F. Supp. 2d 83 (D.D.C. 2009). There, the United States removed the case based on a federal question. *Id.* at 85. The government's dismissal from the case eliminated that basis for jurisdiction. The court then granted the plaintiff's motion to remand the case over the objections of the remaining defendants, who asserted that the court "never lost jurisdiction over th[e] case because it has always had diversity jurisdiction pursuant to 28 U.S.C. § 1332." *Id.* The court explained that those defendants "never removed this case.

16

The United States removed it and removed it only on the basis of federal question jurisdiction. The fact that Non-federal Defendants *might* have removed the case on the basis of diversity is irrelevant—that factual scenario simply never existed." *Id.*; *see also Lundy*, 501 F. Supp. at 602 (citing *Rojas Polanco* for the proposition that surviving claims made by a party that did not remove based on diversity should be remanded to state court).

Though other courts have decided the question differently,[6] Arita's status as a Tennessee resident presents another reason for remanding the case: the forum defendant rule. Under that rule, "a defendant may remove a case to federal court only when there is complete diversity of citizenship 'between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State.'" *Arrington v. Medtronic, Inc.*, 130 F. Supp. 3d 1150, 1155 (W.D. Tenn. 2014) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005)); *see also* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). Arita's Tennessee citizenship would have prevented him from removing the case to this Court in the first instance based on the forum defendant rule, and allowing his case to remain here would undermine that rule's purpose. *See Stark v. Tryon*, 171 F. Supp. 3d 35, 41 (D. Conn. 2016) ("Allowing litigants to assert diversity as the basis for original jurisdiction after the removal-conferring claim is dismissed for lack of subject-matter jurisdiction would circumvent this justifiable bar to removal.").

---

[6] *See, e.g., Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 977 (9th Cir. 2006) ("Once a case has been properly removed, the district court has jurisdiction over it on all grounds apparent from the complaint, not just those cited in the removal notice.").

17

For the foregoing reasons, it is recommended that, if the claims against Saint Francis and the City of Memphis are dismissed, the remaining claims against Arita be remanded to the Shelby County Circuit Court.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Saint Francis and the City of Memphis's motions to dismiss be GRANTED in their entirety. It is further recommended that Hwang's remaining claims against Arita be remanded to the Shelby County Circuit Court.

Respectfully submitted this 20th day of August, 2021.

                                                  s/Annie T. Christoff  
                                                  ANNIE T. CHRISTOFF  
                                                  UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.